JUSTICE COTTER
dissents.
¶29 I dissent from the Court’s disposition of all three issues. I would conclude the District Court’s findings were not sufficient to determine the net worth of the marital estate or to decide whether the distribution was equitable. Moreover, I would conclude the District Court abused its discretion when it failed to consider the tax consequences arising from the court-ordered sale of the marital properties, and failed to include Patrick’s disability income in the marital estate or in the alternative, to consider the disability income in determining if maintenance would be awarded to Eileen. I would reverse and remand to the District Court for determination of an equitable apportionment of the marital estate, and for re-evaluation of the maintenance question.
¶30 Under § 40-4-202(1), MCA, in a proceeding for dissolution of marriage, a district court shall
equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. In making apportionment, the court shall consider the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution or dissipation of value of the respective estates and the contribution of a spouse as a homemaker or to the family unit.
¶31 While we have previously held that a net valuation by the district court is not always mandatory in order for this Comb to properly review marital distributions, a district court’s findings as a whole still must be sufficient to determine the net worth of the marital estate and to decide whether the estate was distributed equitably. See, Harkin, ¶ 31.1 would conclude the District Court’s Findings of Fact, Conclusions of Law and Order wholly failed to satisfy this requirement.
*450 ¶32 The District Court provided values for only a select group of marital assets, distributing them as set forth in ¶¶ 8-9 of the Majority Opinion. In addition, the court directed the parties to sell three specified properties (Rolling Green residence, Towne Court and Timeless Treasures Quilt Shop, and Woodland Park office complex), and ordered payment of several debts out of the gross sale proceeds. Of the remaining net balance, Eileen was to receive $100,000 as a partial adjustment for property distributed to Patrick. Finally, the court determined that 25 % of the remaining net proceeds would be awarded to Patrick and 75 % to Eileen.
¶33 The Court concludes that even though a portion of the estate’s value is unknown (i.e., market values of the properties), the findings are sufficient to determine the net worth of the estate (See ¶ 17). I disagree. The District Court failed not only to assign an estimated market value to each property, but also failed to provide values for the debts it ordered paid from the gross proceeds. The Court notes that at trial the parties agreed on the values of the properties ordered sold (See ¶ 17); however, the District Court failed to include those values in its findings. Moreover, the record reflects the parties did not agree on the value of the Rolling Green residence. Given these deficiencies in the District Court’s order, it is impossible for anyone to approximate what Eileen’s portion of the marital estate will be. Moreover, it is also uncertain whether there would even be sufficient net proceeds to cover the $100,000 due Eileen-which constitutes her adjustment for property distributed to Patrick-let alone what would be left for the 25-75 distribution of the remaining balance.
¶34 The District Court’s findings also fail to clarify the value of various life insurance policies that it ordered cashed out or put towards the proceeds of the properties’ sale. There was disputed testimony as to the actual value of the $500,000 policy that was awarded to Eileen. While the policy apparently had a cash surrender value of $25,500, the District Court’s findings failed to take into account the undisputed fact that the policy was encumbered by a loan, and that to secure the policy, Eileen would have to pay $9,000 in interest, or approximately $750 per month. Moreover, the court also ordered Eileen’s $500,000 life insurance policy cashed out or canceled, but failed to include a cash-out value for the policy. Finally, the court ordered the parties to either cancel or cash out the two remaining insurance policies and directed any proceeds to be applied towards the income from the properties’ sale. However, in its findings, the court indicated a cash value for only one of these policies.
¶35 We do know that the court awarded Patrick all of the disability *451 benefits, which amounted to approximately $12,000 a month, with an estimated increase of $500 per month every year. Patrick also received approximately $1200 per month in social security benefits. Therefore, if Patrick lives 10 more years, to age 56 (the District Court estimated his life span to be between 50 and 60), this amounts to roughly $2 million, tax free. Given the significant value of this award to Patrick, the court’s failure to ascertain the real property values, debt and tax consequences, or potential proceeds from cashed-out insurance policies becomes even more troubling for Eileen, as it is the properties’ ultimate net value which will determine what Eileen receives from the marital estate.
¶36 The Court notes that neither party presented evidence concerning the tax consequences attributable to the sales. However, neither party anticipated the District Court would order the sale of the properties, with the exception of perhaps the Woodland Park complex, and thus neither sought to introduce evidence of potential tax liabilities. Eileen sought an opportunity to present evidence of the tax consequences in her motion for clarification following the court’s Findings of Fact, Conclusions of Law and Order; however, the court failed to conduct a hearing on the matter. In remanding this matter to the District Court, I would instruct the court to consider the tax consequences associated with selling the properties and to reflect those liabilities in the net marital estate, in accordance with our holding in Marriage of Lee. See, Lee, 249 Mont. at 519-20, 816 P.2d at 1078 (citation omitted) (“[Wlhere a property distribution ordered by a court includes a taxable event precipitating a concrete and immediate tax liability, such tax liability should be considered by the court before entering its final judgment.”).
¶37 Finally, because I would conclude the District Court failed to adequately determine the value of the marital estate and hence had no adequate basis upon which to distribute it, I must dissent from the Court’s disposition of Issue Three. The District Court’s finding that the property distribution provides Eileen with sufficient property and funds to meet her needs, with which this Court agrees at ¶ 27 of its Opinion, is wholly unsupported by the Findings of Fact and Conclusions of Law. There is simply no underpinning to support the Court’s conclusion that the District Court did not err in failing to include Patrick’s significant disability income either in the marital estate, or in a determination as to the propriety of maintenance. As a consequence of the inadequacy of the court’s Findings and Conclusions, there is no way to assess whether Eileen will end up with any property or funds, much less whether they will be significant enough to meet her needs.
*452 ¶38 I would therefore remand this matter to the District Court for determination of equitable apportionment of the marital estate, taking into consideration the value of the three properties ordered sold, and the amount of debt associated with the properties, including tax consequences from the court-ordered sale. I would further direct the court to reassess the value of the insurance policies, taking into account all encumbrances and limitations on their value. Finally, once these matters are determined, I would then direct the court to address and resolve Issue 3, based upon an informed valuation of the marital estate. I dissent from our refusal to do so
JUSTICE RICE joins in the foregoing dissent.